IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM E. HALL,

    Plaintiff,

  vs.                                 Civil Action 2-12-cv-726
                                      Magistrate Judge King

MICHELLE FRANCE, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), upon the *Motion for Summary Judgment* filed on behalf of defendants Michelle France and Glenn E. Cahall. *Motion for Summary Judgment* ("*Defendants' Motion for Summary Judgment*"), Doc. No. 35. William E. Hall, who has been designated as plaintiff, *Minute Entry*, Doc. No. 18, opposes *Defendants' Motion for Summary Judgment*, taking the position that it is he who is entitled to judgment as a matter of law. *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* ("*Plaintiff's Response*"), Doc. No. 36. Defendants have filed a reply. Doc. No. 38. For the reasons that follow, *Defendants' Motion for Summary Judgment* is **GRANTED**.

I.    **Background**

This action was initiated as an interpleader action by Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") to determine the proper beneficiary of a life insurance policy on the life of Donald Cahall (the "Decedent"), pursuant to an ERISA-regulated plan ("the Plan"). *See Complaint for Interpleader*

("*Complaint*"), Doc. No. 1. Plaintiff Hall claims the proceeds as the designated beneficiary; Michelle France and Glenn E. Cahall contend that the beneficiary designation is null and void under the express terms of the Plan and they claim the proceeds as the children of the Decedent. The Fund deposited the proceeds, $16,000, with the registry of the court and was dismissed from the action. *Order to Deposit Funds and for Discharge*, Doc. No. 19.

The Decedent was a disabled Central States Covered Participant, insured under the Plan for a $16,000 benefit payable to his beneficiary upon his death. *Complaint*, ¶ 4; *Answer of Defendant, William E. Hall*, Doc. No. 10, ¶ 1. On April 16, 2009, the Decedent designated plaintiff Hall as beneficiary under the policy. *Designation of Beneficiary Form*, attached to *Plaintiff's Response* as Exhibit 2. The Designation of Beneficiary Form contained the following statement directly above the signature line:

> Please note: if the member's marital status is terminated due to divorce, ANY beneficiary designation made by the member will be null and void. If, after a final decree of divorce, the member fails to supply the Fund with a properly executed Designation of Beneficiary form, benefits will be payable pursuant to the preference provisions of Plan Section 14.09.

*Id*. (emphasis in original).

Section 14.09 of the Plan provides:

> It is the responsibility of each Covered Participant to supply the Fund with properly executed enrollment forms as required by the Fund, designating the beneficiary of any benefit described in this Article. . . .
>
> If a Covered Participant's marital status is terminated due to a final decree of divorce, ANY beneficiary designation made by the Covered Participant pursuant to this Article, prior to the final decree of divorce, will be null and void. If, after a final decree of divorce, a Covered

2

> Participant fails to supply the Fund with a properly executed enrollment form as required by the Fund, designating the beneficiary of any benefit described in this Article, benefits will be payable pursuant to the preference provisions as described below.
>
> If a Covered Participant fails to execute proper enrollment forms, then, at his death, benefits will be payable to the first surviving class, as follows:
>
> 1. Covered Participant's Spouse
> 2. Covered Participant's Children, in equal shares
> . . . .

*Complaint*, Exhibit A, p. 82 (emphasis in original).

On October 1, 2010, the Decedent's marriage to Glenna Cahall was terminated upon the issuance of by the Court of Common Pleas of Pickaway County, Ohio, of a *Judgment Decree of Dissolution of Marriage*. *Defendants' Motion for Summary Judgment*, Exhibit A. The Decedent died on July 31, 2011, without supplying the Fund with a new properly executed Designation of Beneficiary Form. *See Complaint*, ¶ 19, Exhibit C; *Answer of Defendant, William E. Hall*, ¶ 8. The Decedent was not married at the time of his death and he was survived by two children, defendants Michelle France and Glenn E. Cahall. *Complaint*, ¶¶ 20-22, Exhibit C.

**II.  Standard**

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any

3

material fact and the movant is entitled to judgment as a matter of law." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

4

Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**III. Discussion**

The facts of this case, as set forth *supra*, are not in dispute and plaintiff Hall does not contend that the record reflects a genuine issue of material fact. Rather, the parties dispute whether the October 1, 2010 *Judgment Decree of Dissolution of Marriage* constitutes a "divorce" under Section 14.09 of the Plan. If so, the prior designation of plaintiff Hall as beneficiary is null and void and defendants are entitled to the life insurance proceeds; if not, the prior designation of plaintiff Hall as beneficiary remains valid and plaintiff Hall is entitled to the life insurance proceeds.

As an initial matter, the parties disagree on the law governing the Plan. Referring to Section 11.11 of the Plan, plaintiff Hall argues that ERISA and Illinois law apply. *Plaintiff's Response*, p. 1. Section 11.11 provides that the Fund is an employee benefit plan governed by ERISA and that "all questions pertaining to the validity or construction of the *Trust Agreement* shall be determined in accordance with the laws of the State of Illinois." *Complaint*, Exhibit A, at p. 57. To the contrary, however, it is the Trust Agreement -- not the Plan -- that is governed by Illinois law. *See id*. Section 11.11 expressly provides that "[a]ll questions concerning the validity of the terms of the Plan shall be determined under ERISA." *Id*.

ERISA requires that plan administrators follow plan documents in determining the proper beneficiary. *See* 29 U.S.C. § 1104(a)(1)(D)

5

(requiring an ERISA plan administrator to discharge his duties "in accordance with the documents and instruments governing the plan"); *Hendon v. E.I. Dupont De Nemours and Co.*, 145 F.3d 1331 (6th Cir. 1998); *McMillan v. Parrott*, 913 F.2d 310, 311-12 (6th Cir. 1990) ("ERISA plans are to be administered according to their controlling documents."). The parties agree that, in this case, the determination of the proper beneficiary requires an interpretation of the word "divorce" in Section 14.09. *See Defendants' Motion for Summary Judgment*, p. 4; *Plaintiff's Response*, pp. 2-3.

"When interpreting ERISA plan provisions, general principles of contract law dictate that [courts] interpret the provisions according to their plain meaning in an ordinary and popular sense." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)). In applying this plain meaning analysis, courts must give effect to the plan's unambiguous terms. *Perez*, 150 F.3d at 556; *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996). In the absence of established federal common law, courts may look to state-law principles for guidance in resolving any ambiguity. *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000).

In the case presently before the Court, the only dispute is whether a dissolution of marriage constitutes a "divorce" under Section 14.09. The plain meaning of "divorce," in an ordinary and popular sense, is unambiguous — it includes a dissolution of marriage. Merriam-Webster, Oxford, Dictionary.com, and *Black's Law Dictionary* all define "divorce" to include a dissolution of marriage. *See*

6

Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/divorce (last visited Apr. 17, 2013) (defining "divorce" as "the action or an instance of legally dissolving a marriage" or "to dissolve the marriage contract between"); Oxford Dictionaries, http://english.oxforddictionaries.com/search?q=divorce&region=us&contentVersion=US (last visited Apr. 17, 2013) (defining "divorce" as "the legal dissolution of a marriage by a court or other competent body"); Dictionary.com, http://dictionary.reference.com/browse/divorce?s=t (last visited Apr. 17, 2013) (defining "divorce" as "a judicial declaration dissolving a marriage in whole or in part, especially one that releases the marriage partners from all matrimonial obligations," "any formal separation of husband and wife according to established custom," or a "total separation; disunion"); *Black's Law Dictionary* 549 (9th ed. 2009) (defining "divorce" as "[t]he legal dissolution of a marriage by a court").  Although some states attach different legal requirements to the termination of a marriage by divorce and dissolution, *see e.g.*, O.R.C. § 3105.08, the plain meaning of the word "divorce" includes both procedures.  *See e.g.*, 27A C.J.S. Divorce § 2 ("When used without qualification, the term 'divorce' imports a dissolution of the marriage relation between a husband and a wife, that is, a complete severance of the tie by which the parties are united."); 46 Ohio Jur.3d *Family Law* § 285 (a dissolution of marriage is "more commonly known as a 'no-fault divorce'"); *Blum v. Koster*, 919 N.E.2d 333, 336 (Ill. 2009) ("[The parties] divorced after 17 years of marriage. . . .  The final judgment of dissolution of marriage incorporated the parties'

settlement agreement."). Accordingly, this Court interprets the use of the word "divorce" as used in Section 14.09 of the Plan to include the dissolution of a marriage.

The Decedent designated plaintiff Hall as his life insurance beneficiary on April 16, 2009. *Designation of Beneficiary Form*, attached to *Plaintiff's Response* as Exhibit 2. That designation became "null and void," pursuant to Section 14.09 of the Plan, on October 1, 2010, when the Decedent's marriage to Glenna Cahall was terminated upon the issuance of the *Judgment Decree of Dissolution of Marriage*. *See Defendants' Motion for Summary Judgment*, Exhibit A; *Complaint*, Exhibit A, at p. 82. The Decedent, who did not thereafter supply the Fund with a new designation of beneficiary form, died on July 31, 2011. *See Complaint*, ¶ 19, Exhibit C; *Answer of Defendant, William E. Hall*, ¶ 8.

The Decedent's prior beneficiary designation was rendered "null and void" and the Decedent "fail[ed] to supply the Fund with a properly executed Designation of Beneficiary form" after the October 1, 2010 termination of his marriage. Because the Decedent died without a surviving spouse, the proceeds of his life insurance policy are therefore payable, pursuant to Section 14.09 of the Plan, to his "Children, in equal shares." *See Complaint, Exhibit A*, at p. 82; *Complaint*, ¶¶ 20-22, Exhibit C. Defendants Michelle France and Glenn E. Cahall are therefore the proper beneficiaries under the Decedent's insurance policy and they are entitled to judgment as a matter of law.

Accordingly, *Defendants' Motion for Summary Judgment*, Doc. No. 35, is **GRANTED.**

8

The Clerk is **DIRECTED** to release the funds held in the registry of the Court to defendants Michelle France and Glenn E. Cahall, in equal shares, as the lawful beneficiaries under the Decedent's insurance policy.

The Clerk shall enter **FINAL JUDGMENT** accordingly.


April 18, 2013                                *s/Norah McCann King*
                                             Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge